UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Ira R. Deiches, Esquire
DEICHES & FERSCHMANN
A Professional Corporation
25 Wilkins Avenue
Haddonfield, NJ 08033
(856)428-9696
Attorneys for Debtors and Debtors-in-Possession

Case No. 12-19562

IN RE:

Judge: Honorable Gloria M. Burns

ROBERT T. SWINT and DEBORA C. SWINT,

Chapter 11

Debtors and Debtors-in-Possession.

# FIRST MODIFIED PLAN OF REORGANIZATION

Debtors/Plan Proponents respectfully submit their First Modified Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.

Dated:  March 22, 2013

_____
ROBERT T. SWINT

Dated:  March 22, 2013

_____
DEBORA C. SWINT

# **TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | 1 |
| | A. | General Overview | 1 |
| | B. | Definitions | 1 |
| | C. | Unclassified Claims | 5 |
| | | 1. Administrative Expenses and Fees | 5 |
| | | 2. Priority Tax Claims | 6 |
| | D. | Classified Claims and Interests | 6 |
| | | 1. Classes of Secured Claims | 6 |
| | | 2. Priority Non-Tax Claims | 7 |
| | | 3. Class of General Unsecured Claims | 7 |
| | | 4. Class(es) of Equity Interest Holders | 8 |
| | E. | Acceptance or Rejection of Plan | 8 |
| | F. | Means of Effectuating the Plan | 9 |
| | | 1. Funding for the Plan | 9 |
| | | 2. Post-Confirmation Management | 9 |
| | | 3. Disbursing Agent | 9 |
| III. | TREATMENT OF MISCELLANEOUS ITEMS | | 9 |
| | A. | Executory Contracts and Unexpired Leases | 9 |
| | | 1. Assumptions | 9 |
| | | 2. Rejections | 9 |
| | B. | Changes in Rates Subject to Regulatory Commission Approval | 10 |
| | C. | Retention of Jurisdiction | 10 |
| | D. | Procedures for Resolving Contested Claims | 10 |
| | E. | Notices under the Plan | 10 |
| IV. | EFFECT OF CONFIRMATION OF PLAN | | 11 |
| | A. | Discharge | 11 |
| | B. | Revesting of Property in the Debtor | 11 |
| | C. | Modification of Plan | 11 |
| | D. | Post-Confirmation Conversion/Dismissal | 11 |
| | E. | Post-Confirmation Quarterly Fees | 12 |

# I.

# INTRODUCTION

Robert T. Swint and Debora C. Swint ("the Swints," "Robert" and/or "Debora," as contextually appropriate) are the Debtors in this Chapter 11 bankruptcy case. On April 11, 2012, the Swints commenced this bankruptcy case by filing their Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. §101, et seq. This document is the First Modified Chapter 11 plan (the "Plan") proposed by Debtors as Proponents ("Proponents"). Sent to you in the same envelope as this document is the First Modified Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a Reorganizing Plan. In other words, the Proponents seek to accomplish payments under the Plan through projected cash flow. The Effective Date of the proposed Plan is June 1, 2013.

# II.

# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

## B.    Definitions

**Scope of Definitions.** For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.    **Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtors, any actual and necessary

-1-

expenses of operating the business of the Debtors, any indebtedness or obligation incurred or assumed by the Debtors in connection with the conduct of their affairs or for the acquisition or lease of property or the rendition of services to the Debtors, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtors under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponentss in connection with the proposal and confirmation of this Plan.

2. **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest," shall mean any Claim against or Equity Interest of the Debtors, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtors, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3. **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507 (a)(1) of the Bankruptcy Code.

4. **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

5. **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6. **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. §158, the unit of such District Court constituted pursuant to 28 U.S.C. §151.

7. **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 275 and also referred to as the Federal Rules of Bankruptcy Procedure.

8. **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

9. **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which the Swints are the Debtors.

10. **Claim** shall mean any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to judgement, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; and all claims as such term is defined in section 101(5) of the Bankruptcy Code.

11. **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

12. **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

13. **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

14. **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

15. **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

16. **Creditor** shall mean any person who has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Debtors's estate of any kind specified in Sections 502(g), 502(h), and/or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtors.

17. **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

18. **Debtors** shall mean Robert T. Swint and Debora C. Swint.

19. **Disbursing Agent** shall mean Robert T. Swint, or any party appointed by and subject to Court approval, who shall effectuate this Plan and hold and distribute consideration to be

distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

20. **Disclosure Statement** means and refers to the First Modified Disclosure Statement field by the Debtors as required pursuant to Section 1125 of the Bankruptcy Code.

21. **Effective Date** shall mean June 1, 2013.

22. **Equity Interest Holder** shall mean the holder of an equity interest in the Debtors.

23. **Equity Interest** shall mean any interest in the Debtors represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtors.

24. **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect..

25. **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

26. **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

27. **Petition Date** shall mean the date on which the Debtors filed their Petition for Relief commencing this Case.

28. **Plan** shall mean the Plan of Reorganization filed in the Chapter 11 Case, together with any additional modifications and amendments.

29. **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2), (3), (4), (5), (6), or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

30. **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

31. **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

32. **Proceedings** shall mean the Chapter 11 Case of the Debtors.

33. **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

34. **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

35. **Proponents** means Debtors.

36. **Reorganized Debtors** means the Debtors after confirmation of the Plan.

37. **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtors have an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtors' interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

38. **Unsecured Claim** shall mean any Claim against the Debtors which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtors, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

39. **Other Definitions**, a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan; moreover, some terms defined herein are defined in the section in which they are used.

C.    **Unclassified Claims**

Certain types of claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponents have <u>not</u> placed the following claims in a class. The treatment of these claims is provided below.

1.    **Administrative Expenses and Fees**

Administrative Expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case which are allowed under Code Section 503(b), and fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee incurred during the Chapter 11 case.

The Code requires that all Administrative Expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

<u>Court Approval of Professional Compensation and Expenses Required</u>

The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

2.  **Priority Tax Claims**

Priority Tax Claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a 507(a)(8) Priority Tax Claim receives the present value of such claim in deferred cash payments, over a period not exceeding five years from the Petition Date.

D.  **Classified Claims and Interests**

1.  **Classes of Secured Claims**

Secured Claims are claims secured by liens on property of the estate. The following represents all classes containing Debtors' secured pre-petition claims and their treatment under this Plan:

| <u>CLASS#</u> | <u>DESCRIPTION</u> | <u>IMPAIRED</u> (Y/N) | <u>TREATMENT</u> |
|---|---|---|---|
| I | TruMark Financial Credit Union (Approximately $148,000.00 | N | TruMark shall retain its lien on Debtors' Cherry Hill Property. Payments shall be made against TruMark's claim in accordance with the terms and conditions of the loan documents evidencing that claim, from funds received by Debtors in the ordinary course. |

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| II | M&T Bank (Approximately $20,000.00) | N | M&T Bank shall retain its lien on Robert's financed 2010 Ford Fusion. Payments shall be made against M&T Bank's claim in accordance with the terms and conditions of the loan documents evidencing that claim, from funds received by Debtors in the ordinary course. |

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| III | Wells Fargo Bank, N.A. (Scheduled as Wells Fargo Dealer Services) (Approximately $12,000.00) | N | Wells Fargo shall retain its lien on Robert's financed 2008 Ford Edge. Payments shall be made against Wells Fargo's claim in accordance with the terms and conditions of the loan documents evidencing that claim, from funds received by Debtors in the ordinary course. |

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| IV | Multibank (To the extent secured by the value of the Florida Property, as appraised as of December 6, 2012 at $289,000.00) | Y | Multibank shall retain its lien on the Florida Property and shall receive distribution of the Florida Property, subject to unpaid real estate taxes, in satisfaction of Multibank's lien on the Florida Property and as a credit of $289,000.00 against Multibank's filed claim of $598,904.74. |

2. **Priority Non-Tax Claims**

Certain Priority Non-Tax Claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment. Debtors do not recognize any such claims and, thus, no treatment of such claims is provided herein.

3. **Classes of General Unsecured Claims**

General Unsecured Claims are Unsecured Claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the classes containing all of Debtors' general unsecured claims:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| V | This Class contains all of Debtors' general unsecured claims, including the balance claimed by Multibank after applying credit for the $289,000.00 value of the Florida Property to be distributed to Multibank on account of and in satisfaction of Multibank's secured claim. $393,043.34 | Y Claims in this class are entitled to vote on the Plan. | This is a base Plan providing a share of a fixed amount rather than a fixed percentage. Each holder of an allowed unsecured claim shall receive a pro rata distribution on account of his/her/its claim(s) from a fund of $138,552.00 to be established by Debtors through contributions of funds generated from ordinary income as follows: Seventeen (17) monthly installments of $2,000.00, followed by eleven (11) monthly installments of $2,232.00, followed by thirty-two (32) monthly installments of $2,500.00. Payments on account of allowed Class V unsecured claims shall be made in sixty (60) consecutive monthly installments commencing on the Effective Date of the Plan, in full satisfaction of such claims. |

**4.  Class(es) of Equity Interest Holders**

The members of this class will be treated as follows:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| VI | Robert Swint and Debora Swint | N Claims in this class are not entitled to vote on the Plan, but are deemed to have accepted the Plan. | Robert and Debora, as the sole members of this Class shall retain their interests in their assets but shall be paid nothing on account of such interests. |

**E.  Acceptance or Rejection of Plan**

Each impaired class of Creditors with claims against the Debtors' estate shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in

-8-

number of holders of the Allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors or Interest Holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponents reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

**F.    Means of Effectuating the Plan**

1. Funding the Plan

Distribution of the Florida Property to Multibank on account of and in satisfaction of Multibank's secured claim shall be made by Debtors' deed to Multibank, or its nominee, in a form satisfactory to Debtors and Multibank, without warranties or covenants, recordable under Florida requirements. Cash distributions under the Plan will be funded by cash flow generated by Debtors' income, net of expenses.

2. Post-Confirmation Management

Robert and Debora shall continue to manage their assets and affairs in the ordinary course.

3. Disbursing Agent

Robert shall act as the disbursing agent ("Disbursing Agent") for the purpose of making all distributions provided for under the Plan, without compensation.

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

**A.    Executory Contracts and Unexpired Leases**

**1.    Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the Reorganized Debtors under this Plan:

Debtors are not parties to any leases or executory contracts.

**2.    Rejections**

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF LEASE OR CONTRACT IS THIRTY (30) DAYS FOLLOWING THE ENTRY OF THE CONFIRMATION ORDER.**

Any Claim based on the rejection of an executory contract or unexpired lease will be barred if the Proof of Claim is not timely filed, unless the Court later orders otherwise.

### B. Changes in Rates Subject to Regulatory Commission Approval

Debtors are not subject to governmental regulatory commission approval of any rates.

### C. Retention of Jurisdiction

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such Orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this section, or if the Debtors or the Reorganized Debtors elect to bring an action or proceeding in any other forum, then this section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other Court, public authority or commission having competent jurisdiction over such matters.

### D. Procedures for Resolving Contested Claims.

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Reorganized Debtors, or any party in interest, up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims or interests, the Disbursing Agent will hold in a separate interest bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim or interest, as listed either in the Debtors' Schedules or the filed Proof(s) of Claim.

### E. Notices under the Plan

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the

Proponents, addressed to:    Ira R. Deiches, Esquire
DEICHES & FERSCHMANN
A Professional Corporation
25 Wilkins Avenue
Haddonfield, NJ 08033
Attorneys for Debtors and Debtors-in-Possession

# IV.

# EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

The Plan provides that upon completion of the distributions required under the Plan, Debtors shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141. Any liability imposed by the Plan will <u>not</u> be discharged. If Confirmation of the Plan does not occur or if, after Confirmation occurs, Debtors elect to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against Debtors or their estate or any other persons, or to prejudice in any manner the rights of Debtors or their estate or any person in any further proceeding involving Debtors or their estate. Upon Confirmation, the provisions of the Plan shall be binding upon Debtors, all creditors, and all Equity Interest Holders, regardless of whether such creditors or Equity Interest Holders are impaired or whether such parties accept the Plan.

**B.    Revesting of Property in the Debtors**

Except as provided in Section IV.D. hereinafter, and except as provided elsewhere in the Plan, the Confirmation revests all of the property of the estate in the Debtors.

**C.    Modification of Plan**

The Proponents of the Plan may modify the Plan at any time before Confirmation; however, the Court may require a new disclosure statement or revoting on the Plan if the Proponents modify the Plan before Confirmation.

The Proponents may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modification after notice and a hearing.

**D.    Post-Confirmation Conversion/Dismissal**

A Creditor or party in interest may bring a motion to convert or dismiss the case under 11 U.S.C. §1112(b), after the Plan is confirmed, if there is a default in performance under the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will vest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested

property only to the extent that relief from stay was not previously granted by the Court during this case.

E.   **Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. §1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

Dated: March 22, 2013

*[signature]*
ROBERT T. SWINT

Dated: March 22, 2013

*[signature]*
DEBORA C. SWINT

-12-